**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RONALD ROBINSON, #R63073, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25-cv-01250-SMY |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| DR. MEYER and DR. GENTRY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

This matter is before the Court for preliminary review of the Second Amended Complaint (Doc. 19) filed by Plaintiff Ronald Robinson.  Plaintiff brings this action under 42 U.S.C. § 1983 for claims arising from the alleged denial of medical care for glaucoma and cataracts.  He seeks money damages.  The Second Amended Complaint is subject to review under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant.  *Id*.

### Second Amended Complaint

Plaintiff makes the following allegations in the Second Amended Complaint (Doc. 19, pp. 1-19):  Plaintiff is diagnosed with glaucoma and takes three eyedrop medications to stop the progression of the disease: Dorzolamide HCL ophthalmic solution 2% (taken twice daily), Timolol maleate ophthalmic solution 5% (taken twice daily), and Latanoprost ophthalmic solution sterile 0.005% (taken once daily).  (Doc. 1, p. 5; Doc. 19, p. 8).  When he transferred to Pinckneyville on May 22, 2024, Plaintiff informed medical staff that he was out of Dorzolamide and was also having trouble seeing.  (Doc. 19 p. 8).  At the time, he had an active prescription and requested a refill.

1

Dr. Meyer would not refill the eyedrops or meet with him to discuss them until June 21, 2024. *Id*.

When Plaintiff finally met with the doctor and described his blurry vision and headaches, Dr. Meyer still would not refill his prescription eyedrops. Dr. Meyer reasoned that Plaintiff probably did not need them because he had gone "all this time" without the eyedrops. *Id*. at 8. Dr. Meyer also refused to refer Plaintiff to the prison's eye doctor, Dr. Gentry, for further evaluation and treatment. When Plaintiff asked what he should do, Dr. Meyer told him to submit a sick call request or write a grievance. Plaintiff's prescription for Dorzolamide HCL ophthalmic solution 2% was not refilled until May 2025. *Id*.

Plaintiff met with Dr. Gentry for the first time on March 10, 2025. *Id*. at 9. After examining his eyes, Dr. Gentry indicated that Plaintiff suffered from cataracts in addition to glaucoma. Dr. Gentry recommended surgery to remove the cataracts, but failed to make the referral to a specialist until April 28, 2025. Even then, Plaintiff was not actually sent to a specialist. *Id*.

Plaintiff met with Dr. Gentry again on July 21, 2025. He reported ongoing blurry vision and headaches. Dr. Gentry examined his eyes a second time and indicated that the cataracts had grown since his initial appointment. He submitted a second order for a referral to an eye specialist on August 8, 2025. Once again, Plaintiff was not sent for treatment or surgery. He continued to suffer from elevated eye pressure, vision loss, and headaches. *Id*.

Wexford Health Sources, Inc. was the private medical corporation responsible for staffing the health care unit at the prison. *Id*. at 10. Neither Wexford nor its medical staff responded to Plaintiff's complaints. Plaintiff repeatedly asked Wexford's medical staff to explain why he was not treated on March 10, 2025, April 28, 2025, July 21, 2025, and August 8, 2025, but they ignored him. Without treatment, Plaintiff suffered from unnecessarily prolonged pain and faces an increased risk of blindness. *Id*. at 10-12.

Based on the allegations, the Court designates the following claims in the *pro se* Second Amended Complaint:

Count 1: Eighth Amendment claim against Dr. Meyer for exhibiting deliberate indifference to Plaintiff's serious eye condition by refusing to refill his prescription eyedrops for glaucoma while also refusing to refer him to Dr. Gentry for further evaluation and treatment in 2024 and 2025.

Count 2: Eighth Amendment claim against Dr. Gentry for exhibiting deliberate indifference to Plaintiff's serious eye condition by delaying or denying his referral to a specialist for treatment of cataracts in 2024 and 2025.

Count 3: Eighth Amendment deliberate indifference claim against Wexford for its policy, custom, or widespread practice of: (1) failing or refusing to respond to inmate requests for diagnosis and treatment of obviously serious medical conditions; (2) refusing to inform inmates about serious risks to their health or safety posed by medical conditions that medical staff discover; and (3) failing to adequately supervise medical staff to ensure timely treatment of serious medical conditions, such as glaucoma and/or cataracts.

Count 4: Illinois medical negligence claim against Wexford under a *respondeat superior* theory of liability, based on the medical staff's breach of the applicable standard of care for treating Plaintiff's glaucoma and cataracts at Pinckneyville in 2024 and 2025 resulting in injuries and permanent damage.

Count 5: Illinois intentional infliction of emotional distress claim against Wexford under a *respondeat superior* theory of liability for anxiety and depression caused by the misconduct of Dr. Meyer, Dr. Gentry, of other medical staff.

Any other claim that is mentioned in the Second Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## Discussion

### Preliminary Dismissals

Plaintiff mentions the following individuals in the statement of his claim but does not identify them as defendants in the Second Amended Complaint: Wexford medical staff/personnel. The Court will not treat non-parties as defendants. *See* FED. R. CIV. P. 10(a) (noting that the title

of the complaint "must name all the parties").  Therefore, all claims against "Wexford medical staff" and "Wexford medical personnel" are considered dismissed without prejudice.

**Counts 1 and 2**

An Eighth Amendment claim based on the denial of medical care requires a plaintiff to allege: (a) an objectively serious medical need; and (b) deliberate indifference to that medical need by each defendant.  *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457-58 (7th Cir. 2020).  An objectively serious medical need is one that has been diagnosed by a physician as requiring treatment or one where the need for treatment would be obvious to a lay person.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Deliberate indifference occurs when a defendant knows about and disregards an excessive risk to inmate health.  *Id.*

Glaucoma is "manifestly a sufficiently serious medical condition.  *Donald*, 982 F.3d at 459 (quoting *O'Banner v. Bizzell*, 151 F.3d 1033 (7th Cir. 1998) (unpublished)).  In addition to glaucoma, Plaintiff allegedly had cataracts.  He claims that both conditions were diagnosed by a doctor as requiring treatment with prescription eyedrops (glaucoma) and surgery (cataracts), and without treatment, his vision deteriorated.  The allegations describe objectively serious medical needs.

The allegations also suggest that Dr. Meyer acted with deliberate indifference by delaying or denying Plaintiff's access to prescription eyedrops for a year, denying his referral to an eye doctor for further evaluation for ten months, and refusing to address his symptoms of eye pressure, blurry vision, and headaches.  As such, Count 1 survives screening against Dr. Meyer.

Plaintiff alleges that after diagnosing him with cataracts, Dr. Genty delayed his referral for treatment and surgery with a specialist on March 10, 2025, April 28, 2025, July 21, 2025, and August 8, 2025.  Plaintiff further alleges that he was never sent to a specialist for treatment and

was also denied treatment for his serious eye conditions at the prison, and as a result, he suffered unnecessarily prolonged pain and vision loss. Based on these allegations, Count 2 survives screening against Dr. Gentry.

**Count 3**

To state an Eighth Amendment claim against Wexford, Plaintiff must allege that a policy, custom, or practice attributable to the private corporation caused a violation of his constitutional rights. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782,786 (7th Cir. 2014) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). Here, Plaintiff alleges that Wexford had a policy of (1) failing or refusing to respond to inmate requests for diagnosis and treatment of obviously serious medical conditions like glaucoma and cataracts; (2) refusing to inform inmates about risks associated with serious medical conditions discovered by medical staff; and (3) failing to adequately supervise medical staff to ensure timely treatment of serious conditions. However, he alleges no connection between these policies and any delays or denial of his care.

According to the allegations, the denials of treatment resulted from an error or oversight by Dr. Gentry, not any policies, customs, or practices of Wexford. Because the allegations describe no plausible nexus between Wexford's policies, customs, or practices and the denial of care to Plaintiff for glaucoma or cataracts, Count 3 against Wexford will be dismissed without prejudice for failure to state a claim.

**Counts 4 and 5**

Plaintiff brings state law claims for negligence (Count 4) and intentional infliction of emotional distress (Count 5) against Wexford. *See* 28 U.S.C. § 1367(a) (conferring supplemental jurisdiction over state law claims that arise from same facts, case, or controversy as federal claims). He names Wexford because it employed the medical providers at the prison. However, Plaintiff

does not indicate which employees engaged in this misconduct or plead facts that support a plausible medical negligence claim (Count 4) or intentional infliction of emotional distress claim (Count 5) against them or their employer, Wexford. *See Morisch v. United States*, 653 F.3d 522, 531 (7th Cir. 2011) (articulating elements of claim for medical malpractice under Illinois law); *McGreal v. Village Orland Park*, 850 F.3d 308 (7th Cir. 2017) (articulating elements of claim for intentional infliction of emotional distress under Illinois law). Thus, neither claim survives screening under the pleading standards described in *Twombly* or Federal Rules of Civil Procedure 8. Counts 4 and 5 against Wexford will be dismissed without prejudice.

### Disposition

The Second Amended Complaint (Doc. 19) survives screening under 28 U.S.C. § 1915A. **COUNT 1** will proceed against **DR. MEYER**, and **COUNT 2** will proceed against **DR. GENTRY**. However, **COUNTS 3, 4,** and **5** against **WEXFORD HEALTH SOURCES, INC.** are **DISMISSED** without prejudice for failure to state a claim.

The Clerk shall prepare for Defendants **DR. MEYER** and **DR. GENTRY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 19), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer

shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to SDIL-Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**The Clerk of Court is DIRECTED to TERMINATE WEXFORD HEALTH SOURCES, INC. as a defendant in CM/ECF and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**IT IS SO ORDERED.**

**DATED:      May 28, 2026**

**STACI M. YANDLE**
**Chief U.S. District Judge**

**Notice to Plaintiff**

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Second Amended Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Second Amended Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.